**666**
      **97 NEW YORK SUPPLEMENT**
     and 131 New York State Reporter
    **(Sup. Ct.**

## FANCHER v. FONDA, J. & C. R. CO.

(Supreme Court, Appellate Division, Third Department. January 8, 1906.)

1. STREET RAILWAYS—CROSSING ACCIDENTS—INJURIES—NEGLIGENCE—CONTRIB-
UTORY NEGLIGENCE.

    In an action against a street railway for injuries received while at-
tempting to drive over a crossing, by collision with defendant's car, evi-
dence examined and *held* to show contributory negligence on plaintiff's
part.

2. SAME—PRECAUTIONS.

    Where plaintiff knew that defendant street railway ran its cars at
a speed of from 40 to 45 miles an hour over a highway crossing, it was
not sufficient for him to look for an approaching car for the last time
before driving upon the tracks when he was 20 feet distant therefrom,
and his failure to look again before attempting to cross, there being a
clear view all along the road, was negligence on his part, precluding a
recovery for injuries received in a collision between his wagon and de-
fendant's car.

    [Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Street Railroads,
§ 215.]

3. SAME—DUTY OF MOTORMAN—REASONABLE CARE.

    While it was the duty of a street railway motorman, on approaching
a crossing over which his car ran at a speed of from 40 to 45 miles an
hour, to use reasonable care, negligence on the motorman's part in
approaching the crossing did not excuse contributory negligence of one
attempting to cross the tracks, in failing to look for an approaching
car immediately before driving on the tracks.

    [Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Street Railroads,
§ 215.]

    Smith and Chase, JJ., dissenting.

Appeal from Trial Term, Montgomery County.

Action by Harry Fancher against the Fonda, Johnstown & Clovers-
ville Railroad Company. From a judgment for plaintiff, and from an
order denying its motion for a new trial, defendant appeals. Reversed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER,
and KELLOGG, JJ.

Nisbet & Hanson, for appellant.

H. V. Borst, for respondent.

CHESTER, J. The plaintiff was injured by a trolly car operated
by the defendant coming in contact with the wagon driven by the
plaintiff, while he was attempting to cross the tracks of the defendant
at a highway crossing at grade, a short distance easterly of the vil-
lage of Cranesville. The defendant operates a double-track trolley road
from the city of Amsterdam to the city of Schenectady on a private
right of way. The Mohawk Turnpike, upon which the plaintiff was
driving, runs nearly parallel to the tracks of the defendant, and the
turnpike crosses the railway tracks obliquely. The turnpike and the
railway at the point in question run easterly and westerly; the west
bound track of the railway is the northerly track, and the east bound
the southerly. The plaintiff was driving a team and a load of sand
on the turnpike, going easterly. The car which collided with him
was proceeding easterly on the southerly track, which was the farthest

removed from the plaintiff as he approached the crossing. It was a limited car running at the rate of about 45 miles an hour. In order to see an approaching car plaintiff had to look behind him, except when he came to that point in the highway where it turned obliquely to cross the railway tracks, where the view was over his right shoulder. The accident happened on the 30th day of August, about a quarter to 5 in the afternoon, when it was broad daylight. The plaintiff testified:

"When I got within about 200 feet of the crossing, I turned around and looked to see if there was anything coming, and there was nothing coming. * * * I looked west again when within about 20 feet of the railroad track, and didn't see anything; then I could see up the railroad track about 1,000 feet or more. My team was in motion all the time until we were struck, kind of a slow gait. .From this 20 feet where I looked I kept driving right along over the track, and when I was on the track I looked around and saw the car right on me, within 200 feet. I was then on the track. The front wheels were on the north track. The horses were partly on the east-bound track."

On cross-examination he said:

"I first looked for the car when I was about 200 feet from the crossing. I turned around and looked up the track as far as I could look. I saw nothing, and heard nothing. I next looked at about 20 feet from the crossing and when the heads of the horses were about 10 feet from the crossing, and saw nothing. * * * I looked again after I was on the track, when the horses and front of the wagon were upon the north track. That is the last time I looked, when the horses were on the north track; that is, the west-bound track. As I looked I saw a car coming on the other track. It was east of the whistling post. That is the last look I took. * * * Q. How far away was the car? A. About 200 feet. Q. What did you do? A. I tried to hurry the horses up to get across. Q. And you failed to get across, and the car struck the hind wheel? A. Yes, sir. * * * Q. Now, why on earth didn't you stop when you saw that car? A. I was thinking I had lots of time to get out of the way. Q. That is the reason; and it turned out you didn't have quite time enough? A. Yes. Q. As you looked, you felt you could pass ahead of the car safely? A. I thought I could, by their slowing down anyway."

If, as the plaintiff states, when he saw the car approaching at a distance of 200 feet away, his horses were on the north track, he was then in a place of safety, and he should have stopped. He could easily have done so, for his horses were going slowly, on a slightly ascending grade, and were not restive or uncontrollable. Nor was he confronted with a double peril so as to be excusable for a mistake of judgment when he was in danger. He apparently took his chances and lost.

It is true that the plaintiff also testified that when he saw the car 200 feet away "the horses were close to the other track; their heads were so close to it they would get hit"; but, when asked how far they were from the other track, he replied, "I don't know"; and, when asked, "Where was your body then?" he replied, "Over the north rail of the north track." His counsel argues that this reply was made by the witness inadvertently under the stress and excitement of a cross-examination, and that what he meant to say was that he was over the south rail of the north track. The evidence of the witness on his cross-examination cannot all be reconciled with that given upon his direct. His effort in his testimony undoubtedly was to place himself in a position of extreme danger just before or at the time when

he first saw the approaching car. The distance between the rails of the two tracks at the point in question is 8½ feet, and the guage of each track is about 5 feet, so that in passing over the crossing at right angles one would have to cover a distance of 18½ feet. But the highway crosses the tracks at this point obliquely, and in following the regular course of the highway the distance in crossing is made greater and is 34 or 35 feet from the north rail of the north track to the south rail of the south track. This being the situation, it would appear that, even if it should be conceded that the plaintiff was on the south rail of the north track instead of on the north rail of the north track as he testified, with the approaching car 200 feet away, he could even then, if he had been at all solicitous for his welfare, have stopped or backed his team in time to have saved a collision. If, however, we take the plaintiff's statement that when he saw the car his horses' heads were so near to the east-bound track that they would get hit as true, which cannot be harmonized with much of his other testimony to the contrary, it is, nevertheless, not seen how he can save his verdict, for the reason that he could not have got himself in that position except by failing to exercise ordinary care and caution. The last time he looked, according to his testimony, before he was on the tracks, was when he was 20 feet distant from the northerly track. Why he did not see the rapidly approaching car at that point is not apparent, for the car must then have been in full view, and he had an unobstructed view of the tracks for a sufficient distance to have seen it. Knowing, as he did, that the defendant ran limited cars at a speed of 40 to 45 miles an hour over this crossing, it was not sufficient for him to content himself with looking for an approaching car, for the last time before entering upon the tracks, when he was 20 feet distant therefrom; but he should have taken the precaution to have looked again before attempting to cross, and, as he had a clear view all along there, it was negligence on his part not to do so.

He says in his cross-examination that he thought he could pass if the car slowed down. While it was the duty of the motorman to exercise reasonable care in approaching the highway crossing, his negligence does not excuse the contributory negligence of the plaintiff. The verdict of the jury upon the question of the plaintiff's contributory negligence is clearly against the weight of the evidence.

For that reason the judgment should be reversed, with costs to the appellant to abide the event. All concur, except SMITH and CHASE, JJ., who dissent.